HIRAM DILLENBECK, Respondent, v. HORACE DYGERT et al., as Administrators et al., Appellants.

Where one of several accommodation makers of a joint and several promissory note paid the same, and subsequently transferred and delivered it for a valuable consideration to a third person, *held*, that, although the note, as an obligation, was extinguished by the payment, yet it remained in the hands of the maker, who paid it, the evidence of his right to contribution from his co-sureties; and that the delivery raised a legal presumption of an intent to pass, and did pass this right to the transferee.

Also *held*, the facts that the transferee paid the full face of the note, and not merely the amount due for contribution, that the transferrer paid the full interest for several years, and that upon his failure the transferee proved the note for its full amount against him in bankruptcy, and received and credited a dividend thereon, were none of them inconsistent

with an intent, deducible from the bare transfer, to assign and pass the right of contribution.

*It seems* the effect of the delivery as passing the right of contribution would not be defeated by the fact that the parties thereto supposed at the time that the note remained a valid and subsisting obligation against all the makers, and that the intent was to transfer it as such.

(Argued October 24, 1884; decided November 25, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made October 28, 1881, which denied a motion for a new trial, and directed that a judgment for plaintiff, entered upon verdict, be made absolute.

Upon the trial exceptions were ordered to be heard at first instance at General Term. Judgment was directed to be entered on the verdict, the same to stand, however, as security only.

This was an action for contribution. The following facts appeared:

George W. Snell and the original defendants in this action were stockholders in a manufacturing company. To secure a loan made to said company, said stockholders executed to the lender their joint and several promissory note for the amount of the loan. Said Snell, after the maturity of the note, paid and took up the same, and thereafter transferred and delivered the same to the plaintiff, who paid its full face therefor. Snell paid the interest on the note for several years, which payments were indorsed thereon. He thereafter became insolvent and was adjudged a bankrupt. Plaintiff proved the note for its full amount in the bankruptcy proceedings, receiving a dividend thereon, which was indorsed on the note.

*M. Rumsey Miller* for respondent. The offer to prove the declaration of Snell, the assignor of the chose in action to a third person, a year after Snell had assigned the same to plaintiff, as evidence against his assignee, was properly rejected. (*Clews* v. *Kerr*, 90 N. Y. 633–4; *Truax* v. *Slater*, 86 id. 630, 632; *Coyne* v. *Weaver*, 84 id. 386, 392; *Burnham* v. *Brennan*, 74 id. 597; *Vonsachs* v. *Kretz*, 72 id. 548, 554, 555;

*Tilson* v. *Terwilliger*, 56 id. 273, 277; *Cuyler* v. *McCartney*, 40 id. 221, 226; *Paige* v. *Cagwin*, 7 Hill, 361.) Before a party excepts on account of the rejection of evidence, he should make the offer in such plain and unequivocal terms as to leave no room for debate about what was intended. (*Daniels* v. *Patterson*, 3 Comst. 47, 51; *Keller* v. *N. Y. C. R. R. Co.*, 24 How. Pr. 185; *Schile* v. *Brokhahus*, 80 N. Y. 620; *McGinley* v. *U. S. Life Ins. Co.*, 77 id. 497.) The defendant's request to nonsuit the plaintiff, because a joint judgment could not be rendered in the action, was properly denied. (*Armitage* v. *Pulver*, 37 N. Y. 494, 501; *Wright* v. *Wright*, 54 id. 437, 443; Code of Procedure, § 144; Voorhis' Code, p. 207, note F; *Hess* v. *Buffalo and Niagara Falls R. R. Co., and N. Y. C. R. R. Co.*, 29 Barb. 391; *Blossom* v. *Barrett*, 37 N. Y. 434, 436; *Wright* v. *Storrs*, 6 Bosw. 600; *Donnell* v. *Walsh*, id. 621.) The liability of one surety to another for contribution attaches or springs up at the time the obligation they sign is delivered, and whenever payment may be made by the surety, he is considered as a creditor of his co-surety, from the time the obligation was made and delivered. (Brandt on Suretyship and Guaranty, § 258; *Sargent* v. *Salamond*, 27 Me. 539; *Coburn* v. *Wheelock*, 34 N. Y. 440-2.) The note in Snell's hands, therefore, being the evidence of the right of contribution when transferred by him to Dillenbeck, carried with it the right of which it was evidence. (*Oneida* v. *Ontario Bk.*, 21 N. Y. 490, 498; *Allen* v. *Brown*, 44 id. 233.) The evidence of the circumstances connected with the transfer of the note by Snell to Dillenbeck fairly shows that it was the intention of the parties that all the rights of Snell, whatever they were, should pass to Dillenbeck. (*Oneida Bk.* v. *Ontario Bk.*, 21 N. Y. 490; *Madison Ave. Church* v. *Oliver St. Church*, 31 Sup. Ct. 385; *McMahon* v. *Allen*, 32 How. Pr. 331; *Tracy* v. *Tallmage*, 14 N. Y. 192; *Mayor, etc.*, v. *Ray*, 19 Wall. [U. S.] 484, 485; *Gerwig* v. *Sitterly*, 56 N. Y. 214; *McBrady* v. *Van Antwerp*, 24 Hun, 322.) Snell's declaration was not evidence of the fact of the payment of the money out of the company's funds, because

the words spoken were not a necessary ingredient of the "fact of payment," and what he said of it did not prove what the fact was. (*Clews* v. *Kerr*, 90 N. Y. 633, 634; *Truax* v. *Slater*, 86 id. 630, 632; *Dodge* v. *Freedman's Savings and Trust Co.*, 93 U. S. 382.) The question whether or not the note was paid by company's money is entirely immaterial, as it was not pleaded as a defense and there was no issue thereon. (*Miller* v. *McCloskey*, 1 Civ. Pro. 252, 259; *McEncroe* v. *Decker*, 58 How. Pr. 250–1; *People* v. *Snyder*, 41 N. Y. 397, 400; *Paige* v. *Willett*, 38 id. 28, 31; *Bruce* v. *Kelly*, 39 Sup. Ct. 39; *Robins* v. *Codman*, 4 E. D. Smith, 325; *Trimmer* v. *Hiscock*, 27 Hun, 364–5; *Thomas* v. *Austin*, 4 Barb. 265; *Howard* v. *Upton*, 9 Hun, 434.) No impediment to affirmance of the order and judgment is worked by the death of Ambrose Gray after decision of the General Term. (*Richardson* v. *Draper*, 87 N. Y. 338, 345.) The judgment will not be reversed, because in an action at law for contribution an aliquot part only can be recovered, or because there was a defect of parties. (Code of Pro., § 148; *Blossom* v. *Barrett*, 37 N. Y. 434, 436; *Wright* v. *Storrs*, 6 Bosw. 600; *Donnell* v. *Walsh*, id. 621; *Easterly* v. *Barber*, 66 N. Y. 433, 440.)

*J. F. Parkhurst* for appellants. The delivery of the paid note to plaintiff by Snell did not transfer to plaintiff any cause of action against the co-sureties for contribution. (*Cambell* v. *Mesier*, 4 Johns. Ch. 334, 338; Story's Eq. Jur. [12th ed.] 481; *Foster* v. *Trustees et al.*, 3 Ala. 302; *Davis* v. *Perrine*, 4 Edw. Ch. 64; *Hodgson* v. *Shaw*, 3 Mylne & Keen, 100; *Dennis* v. *Riber*, 2 McLean, 451; *McLean* v. *Lafayette Bk.*, 3 id. 587; *Woffington* v. *Sparks*, 2 Ves. 569; *Gammon* v. *Stone*, 1 id. 339; *Armstrong* v. *Baldwin*, 5 Beav. 278; *Momson* v. *Marvin*, 6 Ala. 797; *Jones* v. *Davis*, 4 Russ. 297; *Camp* v. *Bostwick*, 5 Am. Rep. 672; *Rittenhouse* v. *Levering*, 6 Watts & S. 190; *Carroll* v. *Bowie*, 7 Gill, 34; *Glazier* v. *Douglass*, 32 Conn. 393; Brandt on Suretyship, § 374; *Merrit* v. *Bartholick*, 36 N. Y. 44.) There could be

no transfer of this right as a principal obligation, without an intent on the part of Snell to transfer, and upon the part of plaintiff to receive the particular thing transferred. (*Dana* v. *Monroe*, 48 Barb. 534; *Hughes* v. *Mercantile Mutual Ins. Co.*, 55 N. Y. 268; *Tuttle* v. *Love*, 7 Johns. 470; *Bruce* v. *Pearson*, 3 id. 534; *Tucker* v. *Wood*, 12 id. 190; *McKinley* v. *Watkins*, 13 Ill. 140; Pothier on Oblig., vol. 1, art. 3, § 17; 2 Bl. 442; 2 Kent, 447; *Erwin* v. *Bk. of Kentucky*, 5 La. Ann. 4; *Fullerton* v. *Dalton*, 58 Barb. 236; *Sourwine* v. *Truscott*, 17 Hun, 432; Pollock's Principles of Contract, 400–415; *Jackson* v. *Ogden*, 7 Johns. 240; 18 Ala. 605; *Hazard* v. *New Eng. Mar. Ins. Co.*, 1 Sumn. 218; 9 Mees. & W. Ex. 535; 4 Wheat. 225; *Dickenson* v. *Phillips*, 1 Barb. 454; *Armstrong* v. *McGhee*, Add. [Penn.], 261; *Kelly* v. *Upton*, 5 Duer, 336; *Hoyt* v. *Story*, 3 Barb. 262; *Gibbs* v. *Linabury*, 22 Mich. 479.) Any mistakes as to the thing sold or in the price will prevent the title passing. (*Raffles* v. *Wichelhouse*, 2 H. & C. 906; 38 L. J. Ex. 160; Benjamin on Sales [2d ed.], 42; *Hughes* v. *Mercantile Mutual Ins. Co.*, 55 N. Y. 265; *Keele* v. *Wheeler*, 7 M. & C. 665; *Tripp* v. *Pulver*, 5 N. Y. Sup. Ct. [T. & C.] 32; *Phillips* v. *Bistoll*, 2 B. & C. 511; *Cochrane* v. *Willis*, L. R., 1 Ch. App. 58; *French* v. *Abenherm*, 9 N. Y. Weekly Dig. 333; *White* v. *Corlie*, 46 N. Y. 467; *Beers* v. *Hendrickson*, 6 Rob. 75.) Plaintiff's position cannot be sustained upon the theory of an equitable assignment, as plaintiff parted with nothing at the time of the alleged transfer. (*Tallman* v. *Hoey*, 89 N. Y. 537; *Hutter* v. *Elwanger*, 4 Lans. 8.) Assigning an incident will not carry the principal obligation. (*Cooper* v. *Newland*, 17 Abb. 342; *Wyman* v. *Smead*, 31 How. 1; *Battle* v. *Coit*, 26 N. Y. 404; *White* v. *Williams*, 1 Paige, 502; *Mets* v. *Daycon*, 53 N. Y. 635; *Bloomer* v. *Waldron*, 3 Hill, 361; *Beers* v. *Hendrickson*, 6 Rob. 75; *Albany Fire Ins. Co.* v. *Bay*, 4 N. Y. 9; *Lawrence* v. *Gebhard*, 41 Barb. 575; *Burnstead* v. *Hoadly*, 11 Hun, 487.)

FINCH, J. We affirm this judgment upon the ground that the note, which was paid by George W. Snell, although extin-

guished as such by the fact of its payment, remained in the hands of Snell, the evidence of a right to contribution against his co-sureties, establishing both that they incurred the original obligation to contribute, and the fact of payment by Snell, which made that obligation operative in his favor ; that the transfer of the note by Snell to the plaintiff was for a valuable consideration, and the court below correctly held that its delivery to the plaintiff passed to him the right of contribution of which it was the evidence ; and that this result is not defeated by the fact that both parties supposed it gave to the transferee a greater right, and held the co-sureties as makers, instead of contributors, for the amount paid by Snell. The novelty and possible importance of the question seem to require that the reasons for our conclusion should be sufficiently developed.

It must be remembered that the exception here argued concedes the liability of the co-sureties defending to somebody ; either to Snell himself, or to plaintiff as his assignee, and the sole inquiry is, not whether they are liable at all, but simply whether they shall pay Snell, or his alleged assignee. The only question is, which of two is entitled to receive the money that is certainly due to one; and the only interest of the defendants in that question is to know which is the person to whom they may safely pay a debt, which, on this appeal, must be treated as valid and existing. Since, therefore, it is immaterial to the defendants which of the two they pay, provided only they pay but once, the practical question remaining is whether Snell, as between him and plaintiff, is entitled to collect and receive this admitted debt notwithstanding what passed between them ; and that, again, is the inquiry whether Snell transferred absolutely nothing, and got plaintiff's money for nothing. We say got his money for nothing, since the proof is that plaintiff advanced to Snell the whole $500 ; and as it also appears that at the date of the transfer there was owing to plaintiff by Snell only the two sums of $130 and $100, and that at the time of such transfer some money was paid, the inevitable inference is that upon delivery of the note the dif-

ference between its face and the amount of Snell's subsisting debt was advanced in cash. The injustice of denying to plaintiff any right whatever against the defendants, and leaving it in the ownership of Snell, requires us to consider whether any rule of law compels such a result.

For some distance in the appellant's argument we feel bound to go with him. That the note was extinguished by payment, and therefore the doctrine of subrogation does not apply, we concede. The creditor had nothing but the note. Until it was paid by one of the co-sureties, he could gain no right as against his fellows. Their liability to him depended upon his extinction of the common debt. Subrogation implies a presumed intention to keep the creditor's security alive, and the equity of so doing as against a principal debtor. Contribution is among sureties only, and presumes the payment and extinguishment of the debt by one for the benefit of all. It rests rather upon the equity of equality than upon contract, though at law, to save the right, a promise to contribute will be implied. (*Campbell* v. *Mesier*, 4 Johns. Ch. 334; *Davis* v. *Perrine*, 4 Edw. Ch. 64; *Armitage* v. *Baldwin*, 5 Beav. 278.)

It follows, also, as the appellant argues, that the transfer of Snell's right of contribution cannot be held to have passed as an incident to the transfer of the note as a principal obligation, since payment left it not an obligation at all; and that if the right of contribution passed, it did so as a new and principal obligation, and not as accessary to a dead and extinct note. And that brings us to the fundamental inquiry, what was the effect of the transaction between Snell and the plaintiff.

It is obvious, on the face of it, that both parties intended that some right against the signers of the note should be transferred. The note in the hands of Snell, although extinguished as such by payment, was yet the evidence of the liability to contribution by the co-sureties originally incurred, and also of the payment by Snell which gave him the right to enforce such obligation. (*Hodgson* v. *Shaw*, 3 Myl. & K. 183.) If, when Snell paid the note, he had taken from the payee, besides the note, a written receipt acknowledging its payment,

and then Snell had transferred both note and receipt to plaintiff for a valuable consideration, there being no other facts but that bare transaction, an intent to transfer the right to contribution would be easily and necessarily inferred. But since the note in Snell's hands was the equivalent of a receipt from the payee, and equally evidence of payment, the transfer of the note, no other facts being present, would compel an inference that the right of which it was the evidence and which subsisted, and not the right which was gone and dead, was intended to be transferred. If, in just such a case as that supposed, the co-sureties had paid to plaintiff their contributory shares, and thereafter Snell had sued them for contribution as due to him, it is hardly possible to doubt that the payment to plaintiff would have been held good. The intent of the party is to be inferred from his acts; the intent to transfer some right, rather than no right, would have been an inevitable presumption; and since no right of which the note was evidence existed, save the right of contribution, an intention to transfer that right would necessarily have been presumed. But this case does not stop at the bare fact of the transfer. The legal inference of intent deducible from that is claimed to be rebutted and supplanted by facts showing a different intent, and that a purpose to transfer the note as a note, and as a living obligation against the signers for its full amount was proved, which is inconsistent with the primary intent inferable from the bare fact of transfer. The facts relied upon for this purpose were three : first, that plaintiff advanced the full face of the note and not merely the amount due for contribution; second, that Snell steadily paid to him the full interest upon the note which he indorsed thereon; and third, that upon Snell's failure the plaintiff proved this note against him in bankruptcy for its full amount, and received and credited a dividend thereon. It seems to us, that none of these facts are inconsistent with an intent deducible from the bare transfer to assign and pass the right of contribution. When plaintiff advanced to the full amount of the note he may very well have assumed that Snell would be liable to him for the full amount of his advance, and the note serve as a

memorandum or evidence of that fact, while establishing only as against the other signers a liability, less in amount, and measured merely by their duty of contribution. On that basis, it would be natural and proper for Snell to pay the full interest, and not strange that its payment was indorsed on the note. And, on that basis, the plaintiff might well prove his debt against Snell in bankruptcy, and receive a dividend upon it, without waiving recourse to the sureties remaining liable, at least, if nobody objected. The intention on the part of plaintiff to hold Snell for the full amount of the advances, and to treat the note transferred as a memorandum of such amount and the payments thereon, could easily co-exist with an intention to hold the other signers as security for the same debt to the limit of their actual liability. An intent on the part of Snell to give to plaintiff a right against himself to the full amount of the face of the note could co-exist also with a further intent to transfer in addition, and as added security, the liability of the co-sureties for contribution. These facts, therefore, do not necessarily disprove the primary intent derived from the transfer. They show only another and added intention to hold Snell for the full amount, without necessarily disproving a co-existing intent to transfer on one side, and hold on the other, a liability of the sureties for a lesser sum.

But beyond this view of the case there remains another. While no one of the parties has testified that this transfer was made under a mistake of law, and in the absence of such proof, we ought to presume that they knew the law, and acted in the light of that knowledge, it may still be possible to infer from the facts that both parties thought the note a valid and subsisting obligation against all the signers, and had no conscious and definite intent to transfer any thing else. But grant that they did not; does it follow that the right of contribution did not pass? It is argued that it did not pass unless the minds of the parties met over that specific transfer; that there must have been a mutual intent to assign that identical right; and no such meeting of minds or mutual assent existed. But it was said in *Schuyler* v. *Smith*, (51 N. Y. 314) that "the

general rule undoubtedly is, that it takes two parties to make an agreement, and that their minds must meet. But this rule is not of universal application. The law sometimes steps in and makes agreements for parties which they did not mutually intend." In the opinion in that case pertinent illustrations are given, but some more nearly allied to the case in hand may be gathered from the reports. In *Oneida Bank* v. *Ontario Bank*, (21 N. Y. 490) a loan was made to a bank for which post notes were delivered which were illegal, but were afterward assigned by the lender to another bank, and it was held that the assignee could recover on the original loan, although the action was on the post notes, and no transfer of the original loan had been made. There, as here, there was no specific transfer of the right which existed, and there, as here, a transfer only of something utterly dead and worthless. What the parties had in their minds was the post notes only, and yet the law made the worthless paper carry to the assignee the valuable right, when such a thought probably never entered the mind of either party. Cases have arisen in which a mortgage, void for usury, has been assigned to third parties, and which was held to carry to the assignees the right to an old security not usurious, for which the void mortgage was given. (*Gerwig* v. *Sitterly*, 56 N. Y. 217.) The reasoning in that case justifies much that we have said in this, but it especially shows how the law deems within the intent of the parties something which was never present to their thoughts, and in spite of some ineffectual thing which was so present. In that case it was said that "it never was the intention of the assignor to retain any thing for himself in respect to the original debt," and with equal propriety we may say here, that Snell never intended to retain for himself, and to be enforced by him, a right of action against the sureties. Still another class of cases are those in which a mortgage has been foreclosed by proceedings entirely ineffectual to pass a title, and where the purchaser's deed has been held to operate as an assignment of the mortgage. (*Jackson* v. *Bowen*, 7 Cow. 14; *Robinson* v. *Ryan*, 25 N. Y. 324.) In these instances there never was in the mind

of either party a conscious intention or purpose of assigning the mortgage. On the contrary, the actual intention was to extinguish the mortgage and transfer the land. In the former of these cases it is said, "the intention was to pass a greater interest. If that failed, it is no objection to the operation of the instrument as an assignment. *Valeat quantum valere potest.*" In that maxim thus quoted lies the germinant seed of the whole doctrine. As the greater right includes the lesser, even though they are of different character, the intent to convey the greater includes the intent to convey the lesser, and if the former fails the latter may prevail. So much shall pass as can pass. In the present case it is quite certain that Snell did not intend to reserve in himself any right or interest which the note in his hands represented, or of which it was the evidence. He thought he was passing the greater right, but did not think he was reserving the lesser one. Plaintiff did not suppose that he was gaining no right against any one but Snell. We think it a true construction of the transfer that so much passed as existed and was capable of passing, and that the mutual intent must be held not limited to the void and useless transfer.

We have examined other objections to the judgment, but find them insufficient to establish error.

The judgment should be affirmed, with costs.

All concur, except RUGER, Ch. J., dissenting, and RAPALLO, J., not voting.

Judgment affirmed.